UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| SARAH LOUSIE W., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], <br><br> Defendant. | Case No.  2:19-CV-00492-REP <br><br> **MEMORANDUM DECISION AND ORDER** <br><br> **(Dkts.  1, 6 & 17)** |

Pending is Petitioner Sarah Louise W.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 17) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a woman in her mid-thirties with a history of being in an abusive relationship.  AR[2] 946.  On December 29, 2016, Petitioner filed an application for social security disability income ("SSDI") as well as an application for supplemental security income ("SSI") alleging that she was disabled due to depression, post-traumatic stress disorder ("PTSD"),

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 14).

**MEMORANDUM DECISION AND ORDER - 1**

shoulder issues, and heart problems.  AR 16, 288.  Petitioner averred that her disability began on September 25, 2016.  AR 16.  The claim was denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  *Id.*  On April November 28, 2018, the claim went to a hearing before Administrative Law Judge ("ALJ") Mark Kim.  *Id.*  On January 10, 2019, the ALJ issued a decision that was unfavorable to Petitioner.  AR 13-26.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-7.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises two points of error, both of which relate to the ALJ's assessment of her mental health functioning.  First, Petitioner argues that the ALJ misevaluated the opinions of a psychologist named Gerald Gardner, Ph.D., who conducted a psychological assessment of Petitioner on June 29, 2017.  Pt.'s Br. at 8 (Dkt. 17).  Second, Petitioner maintains that the record definitively establishes that her PTSD meets the severity of one of the listed impairments and that the ALJ's findings to the contrary are not, therefore, supported by substantial evidence.  *Id.* at 10.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER - 2**

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity since September 25, 2016, the alleged onset of her disability. AR 18.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe

**MEMORANDUM DECISION AND ORDER - 4**

impairments: left tibial chondromalacia and ACL tear, sciatica and degenerative disc disease of the lumbar spine, depressive disorder, anxiety disorder, and PTSD. AR 18. The ALJ also discussed Petitioner's heart and shoulder conditions, but found that these conditions did not cause Petitioner more than "minimal" limitations. AR 18-19.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 19-20.

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ found that Petitioner had the capacity to lift and carry up to 20 pounds occasionally and ten pounds frequently, stand and walk up to three hours, and sit up to six hours. AR 20. The ALJ

**MEMORANDUM DECISION AND ORDER - 5**

determined that Petitioner had several additional postural, environmental, and mental limitations, including that she was limited to "simple, routine tasks" and could have only "occasional and superficial interaction with [the] public and occasional interaction with co-workers." AR 20-21.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled. Here, the ALJ found that as of the date of the decision, Petitioner could not perform her past relevant work as a security guard, janitor, or sales-clerk, but could work full time as a final assembler, a table worker, or a document preparer. AR 24-25. Based on these findings, the ALJ concluded that Petitioner was not disabled. AR 26.

## DISCUSSION

### I.   The Medical Opinion Evidence

Petitioner's primary challenge on appeal is that the ALJ mischaracterized the opinions of the consulting examiner, Dr. Gerald Gardner. Dr. Gardner assessed Petitioner's mental health status on June 29, 2017 at the request of the Disability Determination Services. AR 946-952.

During this evaluation, Petitioner reported that she was violently assaulted by an intimate partner in 2011. She had some contact with counselors after the assault. AR 947. Then, in August of 2016 (shortly before her disability onset date), Petitioner's symptoms "exacerbated" after her ex-husband, "returned and threatened to kill her and kidnap their children." *Id.* Since

**MEMORANDUM DECISION AND ORDER - 6**

that time, Petitioner explained that she had "a few episodes in which she would become dizzy and almost faint, suffering from tunnel vision, in public settings." *Id.* She endorsed avoiding crowded places and public shopping type settings and explained that she sometimes spends three to five hours a day sitting in her car where she feels safer. AR 947, 949. Finally, Petitioner confirmed that she experienced "intrusive recollections of past trauma and fearful hypervigilance that is quite intense." Dr. Gardner concluded that she was not malingering or embellishing. AR 951.

Dr. Gardner conducted several tests to measure Petitioner's mental functioning. These tests showed that Petitioner had good insight, normal language skills, intact memory, and was able to adequately attend to the interview. AR 950. Based on these tests and on the interview, Dr. Gardner diagnosed Petitioner with "severe" PTSD with "associated panic symptoms and depressive moods." AR 951. As to her functional capacity, Dr. Gardner opined that Petitioner had "above-average intelligence," intact judgment, and the ability to remember simple instructions and procedures. *Id.* Dr. Gardner further explained that Petitioner "can rally her attention effectively on brief tasks," but that "[s]he appears likely to have a good deal of difficulty sustaining attention and concentration for a full week secondary to her symptoms. She will be significantly distracted by the presence of others, especially groups in public settings, but likely, men in general." *Id.*

The ALJ elected to give "significant weight" to Dr. Gardner's conclusions and indicated that he was incorporating the limitations assessed by Dr. Gardner into the RFC. AR 23. Because this case arose prior to March 27, 2017, the older rules guiding an ALJ's evaluation of medical source opinions apply to the Court's review of the ALJ's decision. 20 C.F.R. §§ 404.1527 and 416.927.

**MEMORANDUM DECISION AND ORDER - 7**

These rules distinguish among medical opinions based on whether the physician providing the opinion: (i) treated the claimant (a treating physician), (ii) examined but did not treat the claimant (an examining physician), or (iii) neither examined nor treated the claimant (a non-examining or reviewing physician). *Garrison*, 759 F.3d at 1012. In general, the opinions of treating physicians are given more weight than the opinions of examining physicians, and the opinions of examining physicians are afforded more weight than the opinions of reviewing physicians. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Before rejecting the uncontradicted opinions of a treating or examining doctor, the ALJ must identify "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Social Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Where the opinion is contradicted, the ALJ must provide "specific and legitimate reasons" based on substantial evidence. In short, the ALJ may not silently reject the opinions of a medical source or make findings contrary to a doctor's opinions without explanation. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1046 n. 10 (9th Cir. 2007).

It follows from these rules that when an ALJ credits the opinions of a medical source the ALJ must fairly and adequately translate that doctor's findings into the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also See Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Petitioner argues that the ALJ violated these principles by mischaracterizing and softening Dr. Gardner's views on the severity of Petitioner's mental health limitations. Respondent, on the other hand, contends that the ALJ's RFC reasonably reflected Dr. Gardner's report. Res.'s Br. at 2-3 (Dkt. 18).

**MEMORANDUM DECISION AND ORDER - 8**

In resolving this dispute, the Court remains mindful that the ALJ's interpretation of Dr. Gardner's report is entitled to deference, as long as it was reasonable. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."). The Court concludes, however, that the ALJ's decision cannot survive review under this deferential standard.[3]

Dr. Gardner concluded that Petitioner's PTSD would impair her ability to sustain concentration in two regards. First, Dr. Gardner opined that Petitioner's PTSD-related symptoms would impact her concentration in any work setting. As Dr. Gardner described it, Petitioner would be able to "understand and remember simple instructions and procedures" and "rally her attention effectively on brief tasks," but would "have a good deal of difficulty sustaining attention and concentration for a full week secondary to her symptoms." AR 951. The ALJ reasonably translated these impairments into a limitation that Petitioner only be required to engage in "simple, routine tasks" at work. AR 20-21; *see Stubbs-Danielson v. Astrue*, 539 F.3d at 1173-1174 (a limitation to "simple, routine, repetitive" work reasonably captures a petitioner's moderate deficiencies in concentration, persistence, or pace).

Second, Dr. Gardner concluded that Petitioner's PTSD would impair her ability to work around others. Specifically, Dr. Gardner stated that Petitioner "will be significantly distracted by the presence of others, especially groups in public settings, but likely, men in general." AR 951. Respondent claims that the ALJ reasonably translated these limitations into the RFC by restricting Petitioner to "occasional and superficial interaction with [the] public and occasional interaction with co-workers." Res.'s Br. at 2 (Dkt. 18). The Court agrees with Petitioner that

---

[3] The Court agrees with Respondent that the ALJ fairly summarized Dr. Gardner's opinion in the discussion section of the decision. AR 23. This is of no import, however, if the ALJ failed to accurately translate this summary into the RFC.

**MEMORANDUM DECISION AND ORDER - 9**

this translation was unreasonably miserly.  Dr. Gardner confirmed that Petitioner has "severe" PTSD, which "significantly" impairs her concentration whenever she is in the "presence of others."  AR 951.  The RFC, however, contains absolutely no limitations on how many people can be present in the environment in which Petitioner is expected to work.  AR 20-21.  The RFC also presumes Petitioner can, despite experiencing "significantly" intrusive symptoms, perform work requiring her to interact with people she does not know, including unknown men, for up to one-third of the day.  *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, *5 (January 1, 1983) (in the social security context "occasionally" is a word of art that generally means "occurring from very little up to one-third of the time"); SSR 83-14, 1983 WL 31254, *2 (January 1, 1983 (same); SSR 96-9p, 1996 WL 374185, *8 (July 2, 1996) (same).  This is an unrealistic expectation of someone who cannot focus while in the presence of others.  Because the ALJ did not provide any explanation for these noticeable discrepancies between the RFC and Dr. Gardner's opinion, the ALJ's decision cannot stand.  *See Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009) (an "RFC that fails to take into account a claimant's limitations is defective").

      II.      <u>The Remedy</u>

When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of benefits.  *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014).  The proper course turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Id.* at 1100.  In most cases, however, remand for additional investigation or

**MEMORANDUM DECISION AND ORDER - 10**

explanation is preferred.  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).  Such remands allow for the ALJ to resolve any outstanding issues in the first instance.

Petitioner argues that an award of benefits is the proper remedy in this case because Petitioner believes the evidence, when properly assessed, establishes that her PTSD meets or equals the severity of a recognized listing.  Pt.'s Br. at 10-11 (Dkt. 17); *see also* Pt.'s Rply at 3 (Dkt. 19).  The evidence is not this definitive.  Dr. Gardner did not express his opinions in terms of moderate, marked, or extreme impairments.  AR 951.  Petitioner's reading of Dr. Gardner's report as showing that she is completely disabled is not the only reasonable or best interpretation of Dr. Gardner's opinions.[4]  Legitimate questions remain about how to best translate Dr. Gardner's report into an RFC reflecting Petitioner's mental limitations.  The Court will, therefore, reverse and remand for further proceedings under the ordinary remand rule.  On remand, the ALJ is directed to reevaluate the medical record consistent with this disposition.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 17) are **GRANTED,** and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: September 24, 2021

Raymond E. Patricco
U.S. Magistrate Judge

---

[4] For example, on reconsideration, one of the consulting agency psychologists opined that Petitioner should only work in jobs having "limited" social contact.  AR 24.  This might be one possible and reasonable reading of Dr. Gardner's report.

**MEMORANDUM DECISION AND ORDER - 11**